## CHOUTEAU *et al.* v. CHOUTEAU *et al.*

No. 4747.   Opinion Filed October 12, 1915.

(152 Pac. 373.)

1. **PARTITION—Action by Joint Tenant—Joinder of Causes.** A joint tenant out of possession cannot maintain a suit for partition 'against his cotenant, who holds adversely to him, without joining with the demand for partition a cause of action for possession of the land.

2. **TENANCY IN COMMON—Possession—Ouster—Adverse Possession—Presumption.** The mere possession of a tenant in common, no matter how full and complete, does not operate as an ouster of his cotenant, or amount to adverse possession as against the claim of his cotenant. There must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held in subordination to the rights of the cotenant.

3. **PARTITION—Pleading—Defense—Dower—Possession of Homestead.** Where it does not appear from the petition that dower had not been assigned to the widow, or that she was in possession of the homestead, in order to urge such matters as a defense in an action of partition, same must be set up by way of answer.

4. **INDIANS—Alienation of Restricted Lands—Right.** Under the terms of section 14, Cherokee Agreement (Act Cong. July 1, 1902, c. 1375, 32 Stat. 717), a full-blood Shawnee Cherokee Indian was prohibited from alienating his restricted lands by will, where such will was executed prior to Act Cong. April 26, 1906, c. 1876, section 23, 34 Stat. 145.

5. **WILLS—Probate—Jurisdiction—Scope.** In a proceeding to probate a will under Mansfield's Digest of the Statutes of Arkansas 1884, section 6521, the only issue triable is the **factum** of the will or the question of **devisavit vel non,** and in such proceeding the court lacks jurisdiction to construe the will or determine the validity of any of its provisions.

6. **PARTITION—Answer—Advances—Lands of Deceased Indian.** Where the answer of defendants in an action for partition of the lands of a deceased Shawnee Cherokee Indian, who died in 1905, alleged that deceased during his lifetime had made advances by settlement or portion, to certain of plaintiffs who were heirs of deceased, which advances were alleged to be equal in amount or in excess of the share which said plaintiffs would be entitled to

receive of the real and personal estate of the deceased, it was error for the court to sustain a demurrer to that portion of the answer.

(Syllabus by the Court.)

*Error from District Court, Craig County;*
*Preston S. Davis, Judge.*

Action by Edmond Chouteau and others against Addie Chouteau and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions.

*Joseph A. Gill,* for plaintiffs in error.

*W. H. Kornegay,* for defendants in error.

HARDY, J. Defendants in error began this action in the district court of Craig county, on September 23, 1911, seeking partition of the lands described in their petition. The plaintiffs in error, who will hereafter be referred to as defendants, filed their second amended answer to said petition; and on July 22, 1912, the court sustained a demurrer to said second amended answer, and defendant Addie Chouteau excepted to the ruling of the court upon said demurrer, elected to stand upon her answer, and declined to plead further. The other defendants filed their third amended answer, and on December 23, 1912, the court sustained the demurrer of plaintiffs to said third amended answer, and, said defendants electing to stand upon their third amended answer, the court, upon motion of plaintiffs, and over the objections of defendants, rendered judgment in favor of plaintiffs and against defendants, as prayed in the petition, and defendants bring error.

Defendants urge that plaintiffs' demurrer to the answers should be held to search the record and relate back to the petition, and should have been sustained

thereto, and cite the following authorities as sustaining their contention: *Bartholomew v. Guthrie*, 71 Kan. 705, 81 Pac. 491; *McCarthy v. Holden*, 54 Kan. 313, 38 Pac. 261; *State v. Commissioners et al.*, 12 Kan. 426. Plaintiffs urge that this rule is qualified, however, by the condition that, in order for the demurrer to relate back to the petition,' the defendants at the time must insist that this be done, and call the attention of the court to the defect in the petition, and they claim the defendant Addie Chouteau did not do this. The record is silent on this subject so far as she is concerned, but at the time the demurrer was sustained to the third amended answer of the other defendants they insisted that the demurrer should search the record and be sustained to the petition. If defendants'. contention be correct, the case must be reversed; and without deciding whether it was necessary for defendant Addie Chouteau to call the attention of the court to this contention at the time, we shall treat the demurrer as searching the record and relating back to the plaintiffs' petition, on behalf of all the defendants, and determine whether the petition was sufficient.

The petition is assailed upon three grounds: (1) That there is no allegation of possession in plaintiffs; (2) there is no allegation of assignment of dower to the defendant Addie Chouteau, widow of deceased; (3) there was no allegation of proof of heirship in the probate court on the part of plaintiffs.

Under the first objection to the petition it is urged that it contained no allegation of possession in plaintiffs, or a demand for possession. Under the decisions in the state of Kansas, from which our statute comes, it is held that a joint tenant out of possession cannot maintain a

suit for partition against his cotenants, who hold adversely to him, without joining with the demand for partition a cause of action for possession of the land. *Denton v. Fyfe,* 65 Kan. 1, 68 Pac. 1074, 93 Am. St. Rep. 272; *Chandler v. Richardson,* 65 Kan. 152, 69 Pac. 168; *Moorehead v. Robinson,* 68 Kan. 534, 75 Pac. 503. It is further held that a joint tenant out of possession, by joining in his petition a demand for possession, may maintain an action for partition against his cotenants, who hold adversely to him. *Scarborough v. Smith,* 18 Kan. 399; *Scantlin v. Allison,* 32 Kan. 376, 4 Pac. 618; *Ott v. Sprague,* 27 Kan. 620.

The petition alleges that William Chouteau, deceased, was a Shawnee Cherokee citizen by blood, and died in Kansas City, Mo., February 3, 1905, seised of an allotment of lands, which is described, and that all of the parties hereto were heirs at law of the deceased; that plaintiffs, with the exception of Walter Chouteau, a minor, were children, and said Walter Chouteau was a grandchild of deceased, and that defendant Addie Chouteau was his widow; that no partition or settlement of his estate had ever been had, and that, subject to the widow's dower, each of the said children and the grandchild were entitled to a one-ninth interest in said land; and prayed for partition, or, in the alternative, for sale of said lands and a division of the proceeds. Nothing is said in the petition about possession. It is alleged, however, that plaintiffs were the owners of an interest in the land, and, in the absence of anything to the contrary, possession by them will be presumed, and, if there is an adverse holding as against their claims, it is a matter of defense, that should be set up in the answer. *Moorehead v. Robinson, supra; Hayes et al. v. McReynolds et al.,* 144 Mo. 348, 46 S. W.

161; 30 Cyc. 191. And even if the defendants were in possession, the mere possession of a tenant in common, no matter how full and complete, does not of itself operate as an ouster of his cotenant, or amount to an adverse possession as against the claims of such cotenant. There must be something to show a denial or a repudiation of his cotenant's rights, or the possession will be deemed to be had in subordination to the rights of the other co-tenants. *Squires et al. v. Clark et al.*, 17 Kan. 84.

Under the second objection, that there is no allegation that dower had been assigned to the widow, and that by reason thereof she was entitled to remain in possession of the lands until dower had been assigned, and until such assignment partition cannot be had, it is sufficient to say that it does not anywhere appear from the record that she was in possession at the time of the institution of this suit, or at the time of the judgment of the court, and if such were the fact, and if it were a defense, that matter would have to be urged as an affirmative defense, and should have been pleaded in her answer.

The third objection, that no allegation of proof of heirship in the probate court is alleged, cannot be sustained. The defendants rely upon section 12, c. 65, Sess. Laws 1910, which provides that:

"In all estates now being administered, or that may hereafter be administered, any person claiming to be an heir to the deceased, or entitled to distribution in whole or in part of such estate, may, at any time after the expiration of one year from the issuing of letters testamentary, or of administration upon such estate, file a petition in the matter of such estate, praying the court to ascertain and declare the rights of all persons to said estate, and all interest therein and to whom disposition thereof should be made."

This objection is not good, for the reason that it does not appear that the estate of the deceased, William Chouteau, was being administered, and this statute provides for such petition being filed in a pending administration, and, besides, it is further provided in said section that:

"This section shall be cumulative and additional to the provisions of law now existing for determining heirship to any deceased person, and it is not intended that this section shall repeal any existing section or sections of the law now existing governing the administration of estates, except such as may be in direct conflict here·with."

The action of the court in overruling the demurrer to the petition was correct.

Having seen that the petition is sufficient, we next examine the answers of defendants, to determine whether the action of the court in sustaining the demurrer thereto was error, and will consider the answer of defendant Addie Chouteau first. The first paragraph of the second amended answer filed by her consisted of a general denial, followed by specific admissions of the facts set up in plaintiffs' petition, except said defendant denied that plaintiffs, or any of them, have any right or interest in the land described, entitling them to a partition. A general denial, followed by specific admissions, will be limited and qualified thereby.

The second paragraph pleaded as a defense that the said William Chouteau left a will, in which he devised certain legacies to all of his said children, and named the defendant as the residuary legatee, and that the land in controversy constituted a part of the residuum of said estate, and that said will was duly admitted to probate in the probate court of Jackson county, Mo., being the

county in which he resided at the time of his death, and thereafter was duly admitted to probate in the United States Court for the Northern District of the Indian Territory, from which decree admitting said will to probate an appeal was prosecuted to the Court of Appeals of the Indian Territory, and transferred to the Supreme Court of this state, and afterwards dismissed. *Chouteau v. Chouteau*, 25 Okla. 426, 106 Pac. 854. The answer further alleges that a contest of said will was instituted by the plaintiffs in the United States Court for the Northern District of the Indian Territory, in which judgment was rendered dismissing said suit for want of equity, and that no appeal was prosecuted therefrom. Said answer further alleges that certain advances were made by the deceased in his lifetime to plaintiffs, other than Annie Singleton, which advances were equal in value or greater than said plaintiffs would take in the estate of said deceased, and that by reason thereof they are barred from participating therein, and that, as to plaintiff Annie Singleton, she was intentionally disinherited by the deceased, except as to the legacy provided in said last will and testament, which, according to the terms thereof, was the sum of $5 in cash.

The defense of advances is also set up in the third amended answer of the other defendants, and consideration thereof will be reserved for consideration in connection with the demurrer to the third amended answer of the other defendants, leaving for consideration at this time the validity of the will and probate thereof, and the effect of said will as to passing title to defendant Addie Chouteau of the lands involved.

As has been seen, William Chouteau was a Shawnee Cherokee Indian, and the lands in controversy were his

allotment of the lands of the Cherokee Nation, selected by him under the provisions of the Cherokee Agreement, ratified August 7, 1902 (Act Cong. July 1, 1902), and by section 14 of said Agreement it is provided:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to * * * satisfy any debt or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of this act."

Section 15 is as follows:

"All lands allotted to * * * members of said tribe, except such lands as are set aside to each for a homestead as herein provided, shall be alienable in five years after issuance of patent."

William Chouteau died February 3, 1905, which was within the period of restrictions contained in the two sections above quoted, and we are to determine whether a will executed by him was an alienation of his lands within the prohibition of these sections.

Plaintiffs in error contend that the will is not an alienation, and therefore same was effectual to pass title to the lands according to the terms of the will, upon the death of the testator, and in support of this proposition argue that by Act Cong. May 2, 1890, c. 182, sec. 31, 26 Stat. 94, Congress put in force chapter 155, Mansf. Dig. Statutes of Ark., relating to wills and testaments, and chapter 49 of said Statutes, relating to descents and distributions, and, further, that by Act Cong. April 28, 1904, c. 1824, sec. 2, 33 Stat. 573, it was provided that:

"All the laws of Arkansas heretofore put in force in the Indian Territory are hereby continued and extended in their operation, so as to embrace all persons and estates in said territory, whether Indian, freedmen, or otherwise, and full and complete jurisdiction is hereby

conferred upon the district courts in said territory in the settlements of all estates of decedents, the guardianships of minors and incompetents, whether Indians, freedmen, or otherwise."

—and claim that this view is further supported by Act Cong. March 3, 1901, which confers citizenship upon every Indian in the Indian Territory. The questions involved are not new, nor of first impression, for similar provisions in the Choctaw and Chickasaw Nations have been construed, and it was held by the Court of Appeals of the Indian Territory, in *Hayes v. Barringer*, 7 Ind. T. 697, 104 S. W. 937, that the will of a Chickasaw Indian, executed July 26, 1903, was ineffectual to transfer title to restricted lands, for the reason that same was an alienation thereof within the meaning of the provisions restricting the power of alienation. This opinion was affirmed by the Circuit Court of Appeals for the Eighth Circuit, in *Hayes v. Barringer*, 168 Fed. 221, 93 C. C. A. 507. In *Taylor v. Parker et al.*, 33 Okla. 199, 126 Pac. 573, the first paragraph of the syllabus is as follows:

"Indians—'Alienable'—'Inalienable' — Disposition by Will.—The words 'alienable' and 'inalienable,' used to restrict the disposition of lands in the Supplemental Agreement with the Choctaws and Chickasaws (Act July 1, 1902, c. 1362, 32 Stat. 642, 643, secs. 12, 15, and 16), include disposition by will."

The second paragraph is as follows:

"Same—Restriction of Alienation—Wills. The effect of Act April 28, 1904, 33 Stat. 573, c. 1824, was to make the laws of Arkansas, theretofore put in force in the Indian Territory, applicable to another class of persons and estates, to wit, Indians and their property, in so far as it was alienable under the acts of Congress then bearing upon it. The extension of the law of wills enabled the

Indian to devise all his alienable property by will made in accordance with the laws of the state of Arkansas, but did not operate to remove any of the restrictions theretofore placed upon lands of Indians by act of Congress."·

This case was appealed to the Supreme Court of the United States, and affirmed in *Taylor v. Parker*, 235 U. S. 42, 35 Sup. Ct. 22, 59 L. Ed. 121. In *Wilson v. Green*, 50 Okla. —, 151 Pac. 629, in construing a similar provision of the Creek Treaty, in connection with Act Cong. April 26, 1906, 34 Stat. 145, c. 1876, sec. 23, this court held:

"A fullblood Creek Indian had the power to make a will prior to Act April 26, 1906, 34 Stat. 145, c. 1876, sec. 23; but prior to this law he had no right to alienate his allotment by will."

See, also, *Semple v. Baken*, 39 Okla. 563, 135 Pac. 1141.

It appears to us that the intention of Congress in entering into these treaties with the various tribes and prohibiting the alienation of their lands for a certain period, and in enacting the various statutes along these lines, was to prevent the members of the various tribes from making any contract or executing any agreement affecting the title to lands prior to the expiration of the period during which the lands were restricted. These restrictions were placed thereon for the specific purpose of protecting members of the tribes against the consequences of their imprudence during the specified periods. We think there is no material distinction between the provisions of the Cherokee Treaty and those of the Choctaw and Chickasaw Nations, and of the Creek Nation, bearing upon this question, which have already been construed and held to include within the term "alienation" a disposition by will. Therefore we think the will exe-

cuted by William Choteau, he having died prior to the expiration of the restrictions upon the alienation of his land, in which he undertook to convey the real estate in controversy to his widow, Addie Chouteau, was ineffectual for that purpose.

Plaintiffs in error say, however, that this will has been admitted to probate, and a contest has been instituted against the probate thereof, and the petition in said proceedings dismissed for want of equity, and thereby the validity of the will was established, and the title therein attempted to be conveyed was confirmed to defendant Addie Chouteau. This is not true. The mere fact of the will being admitted to probate establishes nothing but the fact of its execution, and the court in admitting said will to probate had no jurisdiction or authority to determine the validity of any of its provisions, or to construe the terms thereof. This was determined in *Taylor v. Hilton*, 23 Okla. 354, 100 Pac. 537, 18 Ann. Cas. 385, where it is said:

"In a proceeding to probate a will under Mansfield's Digest of the Statutes of Arkansas 1884, sec. 6521 (Ind. Ter. Stat. 1899, sec. 3593), the only issue triable is the *factum* of the will or the question of *devisavit vel non.*"

In *Nesbit v. Craig et al.*, 36 Okla. 703, 129 Pac. 705, the same rule was announced, and in the second paragraph of the syllabus the additional rule is stated as follows:

"In such proceeding the court lacks jurisdiction to construe the will or determine the rights of the parties or the validity of any devise therein."

See *In re Allen's Will*, 44 Okla. 392, 144 Pac. 1055.

This, then, leaves for consideration the final question as to the allegations in the second amended answer of the

defendant Addie Chouteau and in the third amended answer of the other defendants, to the effect that during the lifetime of the deceased he had made advances to the plaintiffs, except Annie Singleton, which advances are alleged to be equal in amount or in excess of the value of the share which said plaintiffs would be enttiled to receive of the real and personal estate of the deceased left by him at the time of his death, and described in plaintiff's petition, and that by reason thereof said plaintiffs and each of them to whom said advances were so made are excluded from any share of the real and personal estate of the said William Chouteau, deceased, described in said petition.

It is undisputed that chapter 49, Mansf. Dig., regulating descent and distribution of property, was in force and governed the devolution of this property. By section 2536 thereof it is provided:

"If any child of an intestate shall have been advanced by him, in his lifetime, by settlement or portion of real or personal estate, or both of them, the value thereof shall be reckoned, for the purpose of this section, only as part of the real and personal estate of such intestate descendable to his heirs, and to be distributed to his next of kin, according to law; and, if such advancement be equal or superior to the amount of the share which such child would be entitled to receive of the real and personal estate of the deceased, as herein reckoned, then such child and his descendants shall be excluded from any share of the real and personal estate of the intestate."

Section 2537 provides that, where such advancement is not equal to the share that such child or relative and his descendants would be entitled to receive, they shall be entitled to receive so much of the real and personal estate as shall be sufficient to make all the shares of the

heirs in such real and personal estate and advancement to be as nearly equal as possible; and section 2538 provides that the value shall be deemed to be that value which is acknowledged in writing by the person receiving the same, and if no such written evidence of value exists, then such value shall be deemed according to its value at the time of advancing such money or property. The defendants in error say in reply to this proposition that the land was not subject to alienation, either by act of the original allottee or by any act of the beneficiaries, and that it was contrary to the policy of the United States to permit advancements made by a deceased father to one of his children to affect his portion of his estate, which was inalienable, and the descent of which was absolutely defined by statute. We cannot understand on what theory it can be maintained that chapter 49 governs as to the devolution of this property, and that certain sections of said chapter should be held to be the law, while other sections are not in force. The sections above quoted relating to advancements constitute a part of said chapter 49, and were adopted at the same time, and were in force, as much so as any and every part of such chapter; and it is the duty of the courts to give it effect and apply its provisions in cases coming within its terms, and it must be construed in connection with the other provisions of said chapter, in arriving at the interest which each heir would have in the property of the deceased. The will being invalid as to restricted lands, the deceased was intestate as to said lands, and same would descend under the provisions of chapter 49, and the court, in determining the interests of the heirs in and to said lands under said chapter 49, must necessarily inquire into and determine the truth of the allegations as to advancements made, if any, the

extent, character and value thereof, and if the advancements so made were equal to or in excess of the share which such person to whom such advancements were made would be entitled to take in the real and personal estate of the intestate, then such person would be barred from participating therein, and if the advancements were not equal to or greater than the share to which such person would be entitled, then the amount of such advancement must be considered in determining the share of such person. This was clearly the intention of Congress in adopting the chapter referred to, and the court committed error in sustaining the demurrer of the plaintiffs to that part of the defendants' answer.

For the error indicated, the judgment of the court is reversed, and the cause remanded, with instructions to overrule the demurrer to this part of defendants' answer, and for further proceedings in accordance with this opinion.

All the Justices concur.